**In the Matter of MEDICAL EQUITIES, INC., Debtor.**

**Bankruptcy No. 3–82–01498.**

United States Bankruptcy Court, S.D. Ohio, W.D.

April 30, 1984.

William R. Coen, Dayton, Ohio, for debtor.

James L. Finefrock, Dayton, Ohio, for WTPCo.

Winn C. Hamrick, Dayton, Ohio, for Skinner.

Jack Mayl, Dayton, Ohio, for Third National Bank.

James F. Brandabur, Xenia, Ohio, for Peebles.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### FACTS

Presently before the Court are Objections to the Confirmation of the Second Amended Plan of Reorganization of Medical Equities, Inc. These objections were filed on March 6, 1984 and were heard on April 4, 1984.

Also pending is an "Application for an Order of Dismissal" filed in behalf of Robert S. Peebles, Jr. on 17 August 1982 alleging that debtor "has no assets other than the assignment of option to purchase which debtor forfeited under the terms of the agreement with this creditor...." This application has been held under advisement pending submission to the Court of a proposed Plan, thereby treating the vying contestants for the subject real estate in equipoise. (Previous proposed Plans were not prosecuted to hearing upon objections being filed thereto.)

Medical Equities was organized under the laws of Ohio in 1972 and has been involved in the commercial development of a 48-acre tract of land located in Beavercreek Township, Greene County, Ohio, on which it holds as assignee an option to purchase. On May 21, 1982, Medical Equities filed a voluntary Chapter 11 petition in this Court. In its schedules, it listed $1,511,868.04 in property, of which $1,500,-000 was attributable to the assignee's interest in the option to purchase the Beavercreek tract of land. It has no secured creditors, but scheduled unsecured claims in the amount of $690,233.64, to which $96,-500 was later added.

The evidence adduced as to the valuation of the option is nebulous, other than testimony concerning the proposed sales price in the Plan.

The corporate officers of Medical Equities, as listed in the Statement of Affairs,

are J. Robert Bishop, President, and William R. Coen, Secretary. The Statement of Affairs filed on 16 June 1982 is deficient in not listing the name, title and address of each "director, insider, and managing executive, and of each stockholder holding 20 per cent or more of the issued and outstanding stock, of the corporation," as specified in the particular official Form [No. 8] filed in the case. Even though this information is mandated by Rule 909 of the Rules of Bankruptcy Procedure (then in effect), no explanation for such omissions has been provided by the Debtor.

"Schedule A–3—Creditors having Unsecured Claims Without Priority", as filed by the Debtor on 16 June 1982, lists creditors, as follows:

| | | |
|---|---|---|
| 1. | Robert J. Bishop<br>2137 Cedar Point Roadway<br>Sandusky, Ohio 44870 | $ 56,966.00 |
| 2. | Coen, Breidenbach, Johnson & Hansen<br>345 W. Second Street, Suite 201<br>Dayton, Ohio 45402 | 95,000.00 |
| 3. | William R. Coen<br>345 W. Second Street, Suite 201<br>Dayton, Ohio 45402 | 191,131.41 |
| 4. | Norman A. Dohner<br>2801 Far Hills Avenue<br>Dayton, Ohio 45419 | 4,915.00 |
| 5. | Jane K. Hopkins<br>430 Grants Trail<br>Dayton, Ohio 45459 | 20,000.00 |
| 6. | Robert J. Peebles, Jr.<br>932 Brittany Hills Drive<br>Dayton, Ohio 45459 | 155,497.73 |
| 7. | Richard K. Skinner<br>2418 Lynn Avenue<br>Dayton, Ohio 45406 | 84,500.00 |
| 8. | Third National Bank<br>34 N. Main Street<br>Dayton, Ohio 45402 | 80,000.00 |
| 9. | Ralph L. Woolpert Company<br>2324 Stanley Avenue<br>Dayton, Ohio 45404 | 2,223.50 |

Schedule A–3 was amended on 7 March 1984, as follows:

D. Robert Keeler          48,250.00
837 George Wythe Commons
Centerville, Ohio, 45459

Mr. Keeler and Mr. Shear invested in May, 1981, in a partnership, Wright Towne Properties, to become partial owner of a real estate option when ac-quired from Debtor. These individuals now have requested payment in lieu of a participation in the partnership.

Harry Shear          48,250.00
417 Grants Trail
Dayton, Ohio 45459

It is important to focus upon the nature of several claims as presented. Claim No. 2 filed by Robert J. Peebles, Jr. in the amount of $155,497.13 with interest from May 14, 1982, recites merely that the claim arises from "assignment of option Contract." Claim No. 1 filed by the Third National Bank and Trust Company in the amount of $84,830.25 recites a co-made promissory note on a loan on January 29, 1982, to Medical Equities and William R. Coen and J. Robert Bishop, individually and as corporate officers. Claim No. 4 by Richard K. Skinner in the amount of $178,101.00 is evidenced by five one-year promissory notes made at various times in 1976 payable at 14% per annum "on maturity or by conversion and issuance of Common Stock of Medical Equities, Inc. at $2.50 per share." These notes are endorsed "Payment guaranteed" by William R. Coen. Claims No. 5 by Jane K. Hopkins in the amount of $74,770.09, No. 8 by William R. Coen in the amount of $453,542.06 and No. 11 by J. Robert Bishop in the amount of $323,033.82 recite only "money loaned" on an unsecured basis. The attached accounts recite "loan/withdrawal" with dates ranging between July 22, 1973 and July, 1982.

On 3 April 1984, William R. Coen, Attorney for Debtor, William R. Coen Co., L.P.A., Coen, Breidenbach, Johnson & Hansen, filed an application for allowance of attorneys fees and expenses from the Debtor's estate as administrative expenses in the amounts of $17,190.25 fees and $1175.77 expenses. Mr. Coen is also an officer of the Corporation, a general creditor, an investor, and a stockholder.

On 3 April 1984, James L. Finefrock, James L. Finefrock and Associates Co., L.P.A. filed an application for allowance of attorneys fees and expenses from the Debtor's estate as priority Class I administrative expenses in the amount of $12,160.00

fees and $3,212.25 expenses. Mr. Fine-frock is also the Secretary and the attorney of record for Wright Towne Properties Co., the proposed purchaser of the option to purchase under the Second Amended Plan of Reorganization now under consideration by the Court.

Debtor's only real asset, therefore, is the option to purchase the land, the record title to which is owned by Max J. Zink. Debtor has been able to extend the option by regular payments to Zink, the money for which was obtained from its major creditors, most of whom are principals of debtor. These creditor-principals have also made payments on a promissory note to the Third National Bank of Dayton on behalf of debtor and themselves as comakers.

Debtor acquired the option on February 23, 1973, from Peebles Builders, Inc., which had acquired it from Zink on July 20, 1982. While there was some litigation between Peebles and debtor, it was resolved by settlement in 1980.

In the Spring of 1981, debtor agreed to sell its interest in the option to a new partnership to be formed under the name of Wright Towne Properties, Limited Partnership. On January 31, 1984, Wright Towne Properties by its general partner, Wright Towne Properties Co. [hereinafter both collectively referred to as Wright Towne] and debtor entered into an Offer of Purchase and Escrow Instructions. This offer remains open until May 20, 1984. Wright Towne retained the right to extend the closing date for four months thereafter as its sole discretion. Pursuant to the terms of the Offer, the total consideration to be paid to the debtor for the option is $1,315,000.00, of which $521,014.00 is to pay Zink to convey the title. The amount of $158,000.00 plus interest is deposited in an escrow account, to repay, upon closing, an advance from Wright Towne to Medical Equities made to form a basis for negotiation with the assignor. This amount remains available for distribution as provided in the Plan.

The debtor first submitted its proposed Plan of Reorganization on January 1, 1983.

This was subsequently amended and submitted as the Amended Plan on July 22, 1983. On December 28, 1983, Objections to this Plan were filed, resulting in this Second Amended Plan filed on February 1, 1984. Objections to this second Plan were filed on March 6 and are presently before the Court.

Crucial excerpts from the Proposed Plan are, as follows:

## ARTICLE I

### 1.00 THE SECOND AMENDED PLAN

1.02 The Second Amended Plan; i.e., the Plan, as provided herein, implements a financial plan consisting of acceptance by the Debtor of the Offer of WTPCo and Wright Towne (collectively, "WTP") and payable to each member of a higher priority class before making any payment to any lower class, the assignment and purchase of the Option by the Debtor to WTPCo under terms and conditions of the attached Offer of Purchase and Escrow Instructions (hereinafter referred as the "Offer"). The proceeds received by the Debtor from Wright Towne shall be used to pay the following described classes of expenses and obligations, including the payment of creditors and counsel who have prepared the initial Plan, the First Amended Plan and this Second Amended Plan and who provided the services necessary for providing the Escrow Account and its funds on July 22, 1983 for the purpose of enabling the Plan to be presented to creditors in July, August, September and December, 1983, and January, 1984, and the payment of creditors of Wright Towne and WTPCo who have provided the Escrow Funds for reduction of liens on the Option and the Premises. After substantial payment under the Offer to all creditors and such necessary counsel and parties, dividends to shareholders of the Debtor, if funds permit, shall be paid to the shareholders after payment of all debts and obligations and all principal and interest owed to all creditors and all of the fees and expenses payable to such necessary counsel and parties.

1.03 Payments received under the assignment of the Option to WPTCo shall be paid and divided among the following classes of creditors, necessary counsel and other parties and shall be paid in the order of priority, provided below, paying 100% of the amount payable as provided herein to each preceding higher class before any amounts are payable to any succeeding, next lower class, in the order of priority listed below from highest to lowest, as follows:

A.  CLASS I:

The following fees, costs and expenses of Class I shall comprise the "Priority Expenses" of the highest class, Class I, to be disbursed first and foremost without proration from the assignment of the Option to WTPCo, and other assets of the Debtor, and the funds deposited with the Closing Agent in the Closing Escrow and under the Escrow Agreement, as the case may be:

(a) legal fees and expenses incurred and disbursements of Wright Towne's counsel to the extent the same relate to its,

(1) preparation, revision, review and approval of any Amended Plan(s);

(2) acquisition for the Debtor in July, 1983 of the $158,000 loan and escrow for satisfaction of the Debtor's obligations to its creditors and Peebles;

(3) preparation of the Promissory Note, dated July 22, 1983, for said $158,000 between the Debtor and WTPCo, ("July, 1983 Note"), which Note is on file with the Court, attached hereto as Annex B and hereby incorporated herein by reference and made a part hereof;

(4) preparation of documents, and arranging the release of liens on the Premises, which satisfy the Debtor's and its creditors' obligations in offering the Option and Premises for assignment to WTPCo, including preparation of necessary assignment, waiver, release and estoppel documents which establish a free and clear title to the Premises and provide WTP with the usual and customary documents and assurances associates with real estate transfers, and the correction or clarification of title matters reflected therein; and

(5) services in connection with the Bankruptcy Proceedings, including preparation, revision, review and approval of the Option and the assignment of the Option, and other matters customarily attributable to a seller in a transaction for the purchase and sale of real estate;

(b) one-half of the title examination charges, commitment fees and premiums for title evidence contemplated hereunder;

(c) both (i) the Pre-Closing Escrow expenses incurred in 1983 and 1984 by Medical Equities which are payable to WTPCo and its counsel and which are identified in Paragraph 5 of the Offer of Purchase of Wright Towne and Escrow Instructions, attached hereto as Annex C and incorporated herein by reference ("Offer"), and (ii) the said principal and the interest accrued under the July, 1983 Note identified in Section 1.03 A.(a)(3) above attached hereto as Annex B and made a part hereof, payable to WTPCo by the Debtor;

(d) other items so specified in the Plan and the Bankruptcy Proceedings;

(e) the principal and accrued interest under the Optionors' Loan(s) to the Debtor which is due and payable to Optionors, and costs to cure title defects;

(f) transfer charges and conveyance fees payable upon filing the instruments of transfer of the Option for record;

(g) any commission or fee payable to any real estate broker, salesperson, agent or finder;

(h) one-half of the fees of the Escrow Agent and the Closing Agent;

(i) administrative expenses which include the cost of operations after the date of filing in the Bankruptcy Court.

This class includes accounting and legal fees and expenses not described above, as approved by the Court; and

(j) new capital described in (a)(2) and (c) and any other new capital granted priority status by the Court.

B. CLASS II:

There shall be no prorations of real estate taxes and assessments, both general and special, except as may be contemplated by the Option and the assignment of the Option by the Debtor to WTPCo (the "ME Assignment"). Class II consists of the following:

(a) real estate taxes;

(b) Internal Revenue Service taxes and expenses, net of penalties and assessments; and

(c) other taxes, if any.

C. CLASS III:

Class III consists of Robert J. Peebles, Jr., See Section 1.04.

D. CLASS IV:

Class IV is Comprised of:

(a) D. Robert Keeler and

(b) Harry Shear.

E. CLASS V:

Class V consists of:

(a) Coen, Breidenbach, Johnson & Hansen;

(b) Dohner, Louis & Stephens, Inc., a.k.a. Norman A. Dohner and Associates, Inc.;

(c) The Third National Bank & Trust Company, of Dayton, Ohio; and

(d) Ralph L. Woolpert Company.

F. CLASS VI:

Class VI consists of:

(a) Robert J. Bishop;

(b) William R. Coen;

(c) Jane K. Hopkins;

(d) Richard K. Skinner ("Mr. Skinner"), and

(e) Norman A. Dohner (individual).

G. CLASS VII:

Class VII is comprised of all of the shareholders of the Debtor Corporation.

1.04 Robert J. Peebles, Jr. is included in Class III but the Plan contemplates that, upon Confirmation of the Plan and acceptance of the Offer by the required number or representation of creditors, as supervised by the Court, Robert J. Peebles, Jr.'s entire interest in (i) the Premises, (ii) the Option and (iii) the Debtor shall be completely liquidated in accordance with the applicable terms of the Offer and upon the closing, as described therein and in Paragraphs 5, 6, 7 and 12 of the Offer concerning distribution to creditor-Peebles and the closing. Such liquidation of the interest of Robert J. Peebles, Jr. in the Premises, the Option and the Debtor in accordance with the Offer is to the benefit of the Debtor and all of its creditors in order to maximize the sales proceeds to the creditors and to provide Mr. Peebles with the agreed upon funds which is $150,000, plus interest earned thereon in escrow, plus or minus any other amount approved by the Bankruptcy Court, such $150,000 having been placed into escrow on Peebles' behalf by the Debtor under the July, 1983 Note which evidences a loan on July 22, 1983 to Debtor from WTPCo.

The second Amended Plan sets up seven classes of creditors to be paid as follows:

A. Class I: Priority expenses, including attorneys fees for both Medical Equities and Wright Towne Properties Co., one-half of the title fees, and other closing expenses, to be paid in full;

B. Class II: Taxes, an undetermined amount, to be paid in full;

C. Class III: Robert J. Peebles, Jr., successor to the interest of Peebles Builders, Inc. in the option, $150,000 plus interest;

D. Class IV: D. Robert Keeler and Harry Shear, amount limited to $96,500;

E. Class V: (a) Coen, Breidenbach, Johnson & Hansen;

(b) Dohner, Louis & Stephens, Inc;

(c) The Third National Bank & Trust Company, of Dayton, Ohio; and

(d) Ralph L. Woolpert Company.

to be paid 100% of their claims (in full).

F. Class VI: Robert J. Bishop, William R. Coen, Jane K. Hopkins, Richard K. Skinner and Norman A. Dohner, various creditor-principals, to be paid 100%, except for Richard K. Skinner, Objector herein, whose "amount shall be limited to the amount determined by the Board of Directors of the Debtor."

G. Class VII: Debtor's shareholders, to be paid "A dividend discretionary with the Board of Directors of Debtor as funds become available and to the extent Debtor determines to distribute funds from the corporation to the shareholders."

The names and number of the shareholders are not revealed in the Plan.

The ballot tabulation pertaining to the Plan *sub judice* is, as follows:

Class III   Robert J. Peebles rejected, his claim being in the amount of $155,497.73.

Class IV   D. Robert Keeler and Harry Shear filed no ballots. They have denied they are creditors or parties in interest of Medical Equities.

Class V   (a) Coen, Breidenbach, Johnson & Hansen accepted on a claim in the amount of $95,000.00;

(b) Norman D. Dohner & Associates and Dohner, Louis & Stephens accepted on a claim in the amount of $7579.32

(c) Third National Bank & Trust Company accepted on a claim in the amount of $98,588.17;

(d) Ralph L. Woolpert Company accepted on a claim of $2,223.50.

Class VI—

(a) J. Robert Bishop accepted on a claim of $211,319.81;

(b) William R. Coen accepted on a claim of $412,520.35;

(c) James K. Hopkins accepted on a claim of $69,279.87;

(d) Richard K. Skinner rejected on a claim of $178,381.60;

(e) Norman A. Dohner accepted on a claim of $11,405.00;

Class VII—The names of the shareholders is not disclosed, and there are no ballots for this Class.

Skinner's Objection (without citations of legal authorities) to this Plan are fivefold, summarized, as follows:

1. Wright Towne's attorney is the president of that corporation and has also been listed as a Class I creditor. Also, in this regard Skinner urges that it is without precedent for the seller of property to pay closing costs or a purchaser's title fees;

2. Skinner questions Class IV, stating that neither Keeler nor Shear had been listed as creditors;

3. Skinner challenges why the various ordinary general unsecured *business* creditors in Class IV are to be paid prior to the Class V unsecured creditors pointing out the First Amended Plan limited the amount of one of the business creditors (the law firm of Medical Equities' Attorney and Secretary) but this limit was not included in the Second Amended Plan;

4. In Class VI, Skinner is to be given separate treatment from other creditors in that class. The treatment is to be decided by debtor's Board of Directors, although two of the three Directors are listed also as unsecured creditors having a higher priority;

5. The condition of the Offer of Purchase are entirely in the control of Wright Property, which can walk away from the deal at any time, thus there is no mutuality of consideration.

Briefs contra Skinner's Objections were filed on March 7 by debtor and on March 9 by Wright Towne.

On February 22, 1984, Robert J. Peebles, Jr. submitted his ballot rejecting the Second Amended Plan. According to the April 4, 1984 Report of Tabulation of Ballots— Second Amended Plan (Corrected) submitted by debtor, all creditors, other than Skinner and Peebles, representing 79% of all votes had voted in favor of confirmation of the Plan.

## DISCUSSION

This case essentially involves only one, and the latest, stage in sophisticated efforts over a period of years to assert control over the disposition of what appears to be a valuable tract of commercial real estate, after initial development efforts resulted in a stalemate and litigation among the investors. The total amount of unsecured general trade creditors is nominal. In fact, it is reasonable to conclude that the engineering firm (Woolpert Consultants) is the only one, in the amount of $2223.50. The Third National Bank and Trust Company is an unsecured creditor for co-made loans to the Debtor and principal investors William R. Coen and J. Robert Bishop for corporation business.

This Bank, however, also filed a proof of claim (Claim No. 6) in the amount of $13757.92 for a loan to W. Williams Look, which became due (and is in judgment) secured by a pledge of 10,000 shares of Medical Equities common stock.

In analysis of the complicated situation presented, exacerbated by the failure of the parties to present all of the crucial facts to resolve the issues of law implicit but not briefed, the litigants can fairly be categorized and distinguished on the designation of the relationships among insiders or non-insiders of Medical Equities.

The designation of insiders herein is confined to the meticulous definition as presented in 11 U.S.C. §§ 101(2) and 101(25), to include directors; officers; persons in control; relatives of these officers; and persons who own, hold or control 20% or more of debtor's voting securities. This definition is also read with regard to the House Committee Report which refers to persons with such a "close relationship" to the debtor "that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 312 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 6269; Bkr-L Ed, Legislative History § 82:15, p. 312.

■ The weight of the evidence would favorably reflect upon confirmation of the Plan as it pertains to the best interests of the creditors who are general unsecured trade creditors and minimal. (Class V). The fact that there may be two insiders in the class is not material and does not derogate from the class acceptance because insiders are not *ipso facto* disqualified from voting, in the absence of bad faith. See 11 U.S.C. § 1126(c) and (d). There has been presented in this regard no evidence of bad faith and no objection to the amounts of the claims within the class.

### I

■ A claim or interest may be included in particular classes only if they are "substantially similar to the other claims or interest of such class." 11 U.S.C. § 1122(a); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 406 (1977), U.S.Code Cong. & Admin.News 1978, 6362.

The facts present an unusual perspective to the purpose and effect of classifying claims and interests. Based upon representations in behalf of Medical Equities all members of Class VI are of the same character; that is, insider investors. If so, a corollary principle must necessarily follow; namely: all members of the same Class must have equal treatment by the Plan. The corollary in the instant case does not follow inasmuch as one member of the Class (Skinner) is not assured of an equal distribution. The Plan offers all other members a cash distribution in a finite amount (100%). Skinner may or may not receive cash distribution at the discretion of the corporate management of Medical Equities, who also contest the Class. Whether this creditor can be forced to accept capital stock in lieu of cash as argued in behalf of Medical Equities is not entirely certain from the evidence, as a matter of law. This question has not been presented to the Court and cannot be obliquely resolved. The conclusion now dictated, nevertheless, is that Skinner must be classed as either an unsecured creditor or as a stockholder and treated accordingly. His claim or interests cannot be subject to

a "cram-down" by the other claimants within the class which bear a contradictory character and elect to receive a more favorable treatment in the distribution. The fair and equitable mandate of the Chapter 11 procedure must apply not only to conflicting classes as an absolute priority test, but also to members of a class *inter sese*.

## II

In addition to the legal defects in classification as to Class VI, confirmation must be denied as to Class IV. The parties included therein hold no lien or property interest superior to the claims of Class VI. The members of this Class have specifically refused either to accept or reject the Plan, and have entered an appearance to deny that they are creditors of the Debtor. Their legal status is obscure from the evidence adduced. Based upon their representations they were involved in the issuance of partnership shares by a predecessor "Wright Towne Properties" in connection with one of the earlier proposed Plans of Reorganization. They have since decided not to participate in any such partnership and apparently have demanded a return of their cash investments.

Without reflecting upon the strength or validity of their demand for the return of the investment funds committed to "Wright Towne Properties", the court must conclude that the instant Chapter 11 case, and the creditors and other parties in interest *sub judice*, are not privy to the business affairs of Wright Towne Properties as previously constituted. The Chapter 11 jurisdiction does not afford a conduit for payments to parties who are not subject to the jurisdiction of the court over the Debtor or the Debtor's estate.

Even assuming that if all claimants had accepted the instant Plan and there existed no problems of a fair and equitable distribution to each, Class IV parties have filed no claims and have refused to either accept or reject the Plan. They are not parties either by consent or by adversarial process.

## III

The Plan cannot be confirmed as to Class III (Robert J. Peebles, Jr.) because his interest is not being paid full value and because this Class bears a priority over all other classes, including Classes I and II. The feasibility of the Plan depends entirely upon liquidation of Class III and the exercise of the option to purchase the title to the real estate from the record owner, Max J. Zink.

The Second Amendment to Assignment of the Option Contract stipulated that the balance due on the contract was $137,500 plus interest accrued in the amount of $70,-755.89, totaling $208,255.89 on February 23, 1973. The contract rate of interest of 12 per cent per annum; and, the balance due on the date of filing the claim in the Chapter 11 Case, on June 17, 1982, was $155,497.73 together with interest from May 14, 1982. The Plan, however, provides for a payment to Class III of only $150,-000.00 deposited in escrow, plus interest earned only on the $150,000.00.

Class III is more than a general unsecured creditor. This debt involves a reversionary interest in the purchase option and must be paid in full before payment to general unsecured claims. In fact, to the extent of the value of the reversionary interest as collateral, the claim is secured in effect.

Thus, Class III is receiving less than full value in deference to junior classes which are being paid 100 per cent of value.

Furthermore, Class III is being paid subservient to Class II (taxes) and Class I (including attorney fees to the attorneys for Debtor and for Wright Towne), which priority conflicts with the obligations of the original Option Contract Assignment.

Furthermore, the Class I priority claims for attorneys' fees to the attorneys for Debtor and Wright Towne are based upon professional services not previously authorized by the Court and not allowable at least to the extent of conflicts of interest in violation of 11 U.S.C. §§ 327, 328, 329 and 1103. Assuming such expenses are the responsibility of the Debtor corporation

and Wright Towne individually, and not the Debtor in Possession, they cannot be allowed by the Court as prior to the claims of any creditors or interests not accepting the Plan or paid full value under the Plan. Otherwise, the senior debts would be unfairly discriminated against because of overcompensation to junior debts. The same principles apply to the payment of debts to insiders included in Class V ahead of senior debts.

The traditional requirements and safeguards as to the payment of administrative priority claims, such as attorneys' fees, as mandated by 11 U.S.C. § 328(a) and (c) and Rule 2014 of the Rules of Bankruptcy Procedure cannot be circumvented by the provisions of a proposed plan of reorganization, as proposed herein.

There is also before the Court an application by Robert J. Peebles, Jr. for an order to dismiss the case or to accelerate the effectuation of a plan of reorganization.

Such an order would be to the obvious advantage of Mr. Peebles because of a reversion of the option to purchase and the opportunity then to exercise the option to take title to the real estate upon payment of the balance of the purchase price to Max J. Zink. This balance is less than $500,000.00 but the Wright Towne purchase price is $1,315,000.00.

Unfortunately, dismissing the Chapter 11 case would not put the parties in their original positions, but, also, would be detrimental to the best interests of the other creditors and interests by effecting the loss of capital improvements to the property worth hundreds of thousands of dollars. Conversely, Peebles is more than adequately protected by the excess value of the property, so long as the option to Zink is not forfeited.

In conclusion, and IT IS ORDERED that the confirmation of the Second Amended Plan of Reorganization must be denied because (1) the ownership interest claim of Robert J. Peebles, Jr. (Class III) would not be paid in full value, including contract interest, before junior claims are paid; and, the plan discriminates unfairly and is not fair and equitable, 11 U.S.C. § 1129(b)(1); (2) the claim of Richard K. Skinner has been improperly classified in Class VI and is also not being paid its full value ahead of Class VII (the corporate shareholders of Debtor); (3) the claims of the Attorneys for Debtor and Wright Towne are based upon professional services not authorized by the Court and cannot be properly classified as a Class I administrative priority superior to Class II (tax claims) and Class III (Peebles) because of conflicts of interest in violation of 11 U.S.C. §§ 327, 328, 329 and 1103.

IT IS FURTHER ORDERED that the application of Robert J. Peebles, Jr. for an order of dismissal is denied upon condition that Medical Equities provide adequate protection by exercising the option to purchase the 48.616 acre tract of land conformably to the option contract dated July 20, 1972 and comply with the condition precedent requiring payment of the initial contract payment within 30 days of April 20, 1984.

IT IS FURTHER ORDERED that the Chapter 11 case be dismissed if Peebles is required to exercise the option on or before option date expiration within 30 days of April 20, 1984.

IT IS FURTHER ORDERED that the Chapter 11 case be dismissed if a plan of reorganization conformably to the above decision has not been submitted to the Court by the Debtor or an interested party within 30 days after May 20, 1984.