**In re UNITED MARINE, INC., Debtor.**

**Bankruptcy No. 94–14913–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

June 29, 1996.

Charles W. Throckmorton, Kozyak, Tropin & Throckmorton, P.A., Jonathan K. Winer, Co–Counsel, Miami, Florida, for Debtor.

Joel M. Aresty, Miami, Florida, for Guardian Trust Realty.

Steve Turner, U.S. Dept. of Justice, Office of the U.S. Trustee, Miami, FL.

## MEMORANDUM ORDER AND OPINION ON CONFIRMATION OF DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION

A. JAY CRISTOL, Chief Judge.

THIS CAUSE came before the Court on January 24, 1996 for a confirmation hearing on the Debtor's First Amended Chapter 11 Plan or Reorganization. The Court having heard testimony, received exhibits, and heard argument of counsel, and being otherwise duly advised in the premises, makes the following findings of fact and conclusions of law.

### HISTORY

1. On November 22, 1994, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

2. An order for relief was entered by the Court on November 22, 1994.

3. The Debtor and its predecessors in interest have been engaged in the sale of marine products in Miami since 1914. (T30–31).[1] The Debtor's schedules reflect assets of $2,292,617.58 and liabilities of $7,291,156.65. (Debtor's Exhibit 3).

4. On or about November 7, 1995, the Debtor filed with the Court its First Amended Plan of Reorganization. (Debtor's Exhibit 2, Schedule A).

---

1. References designated by "T" are to the transcript of January 24, 1996. References to Gary Scarborough's sworn confirmation affidavit, which was received into evidence at the hearing,

### Overview of the Plan

5. The plan classifies creditor claims and equity interests into 6 classes:

Class 1—Secured claim of SunBank (approximately $4.0 million).

Class 2—Priority Claims

Class 3—Other Secured Claims

Class 4—Secured Tax Claims

Class 5—General Unsecured Claims Over $1,000

Class 6—General Unsecured Claims Under $1,000

Class 7—Equity interest of United Resources, Inc., the Debtor's sole shareholder.

6. The plan and the approved disclosure statement reflect that Classes 1, 5, and 6 are impaired, and the other classes are unimpaired. Class 1 (SunBank's secured claim) is discussed in greater detail below. Under the Plan, Class 5 general unsecured creditors will be paid 10% of their claims over 4 years, and creditors in Class 6, a convenience class consisting of claims of $1000 or less, will receive one 10% distribution on the effective date of the plan. Under the plan, United Resources, Inc. ("URI"), the Debtor's sole shareholder, will cancel its old stock in the Debtor and receive 100% of the shares of the stock of the reorganized debtor.

### Confirmation Issues

7. Although several objections to confirmation were filed, all were withdrawn prior to the confirmation hearing, with the exception of the objection filed by Guardian Trust Realty ("Guardian"). Guardian was the sole objector at the confirmation hearing.

8. At the January 24 hearing, the Debtor offered the sworn confirmation affidavit of its president, Gary Scarborough, which was adopted by Mr. Scarborough when he testified at the hearing. Guardian does not dispute, and the Court finds, that the plan complies with 11 U.S.C. § 1129(a)(1), (2), (5),

---

are designated by "Scarborough." Any references to "Exhibits" are to exhibits received in evidence at the hearing.

(7), (9), (11), and (12), and that 11 U.S.C. § 1129(a)(4), (6), and (13) are inapplicable.

9. Based on Guardian's objections, the Court must decide the following issues:

Has the plan been accepted by at least one impaired class, without regard to acceptances or rejections of insiders, thereby satisfying § 1129(a)(10)?

Has every impaired class accepted the plan, thereby satisfying § 1129(a)(8)?

Was the plan proposed in good faith and not by any means forbidden by law, thereby satisfying § 1129(a)(3)?

Does the absolute priority rule apply in this case to bar confirmation of the plan?

### The Plan Satisfies § 1129(a)(10)

10. At the hearing, the Court orally ruled that the plan satisfies § 1129(a)(10). (T85). The plan has been accepted by Class 1, which the Court finds to be an impaired accepting class. The sole creditor in Class 1 is SunBank, the Debtor's secured creditor.

11. After the commencement of this Chapter 11 case, Sun Bank and the Debtor agreed to a forbearance agreement under which Sun Bank's secured claim will be paid from the proceeds of phased sales of real estate by one of the Debtor's affiliates, and under which Sun Bank will attain a mortgage in the minimum amount of $125,000.00, secured by a lien on the Debtor's property and stretched out for the period of one year. (Debtor's Exhibit 2, Exhibit A, at pp. 9–10).

12. Since SunBank will not be paid in full on the effective date of the plan, and its lien is being stretched out, SunBank is impaired. Sun Bank is not an insider. Sun Bank has accepted the plan. Accordingly, all requirements of § 1129(a)(10) are satisfied.

### The Plan Satisfies § 1129(a)(8)

13. § 1129(a)(8) requires, as a condition of plan confirmation, that *each* impaired class accept the plan. If § 1129(a)(8) is not satisfied, then the plan proponent must satisfy cramdown standards under 11 U.S.C. § 1129(b).

14. There are three impaired classes under the plan. As noted, Class 1, the unsecured claim of Sun Bank is impaired and has accepted the plan. The other two impaired classes are Class 5, consisting of general unsecured creditors, and Class 6, a convenience class formed pursuant to 11 U.S.C. § 1122(b) consisting of unsecured creditors holding claims of $1,000 or less.

15. The Court finds that Class 6, the convenience class, is a permissible class, that it contains no insiders, and that it has accepted the plan.

16. This leaves Class 5, which consists of all other creditors holding allowed general unsecured claims. If Class 5 has accepted the plan, then § 1129(a)(8) is satisfied.

17. 11 U.S.C. § 1126 governs the issue of whether a class of creditors has accepted a plan. § 1126(c) provides that a class has accepted the plan if acceptances are filed by more than one-half of the creditors in the class, holding at least two-thirds of the dollar amount of allowed claims in the class.

18. Eleven Class 5 creditors accepted the plan, and three rejected it. (Debtor's Exhibit 4, Exhibit A). Therefore, more than one-half of the creditors casting ballots in Class 5 have accepted the plan.

19. Thus, the question is whether creditors holding at least two-thirds of the allowed unsecured claims in Class 5 have accepted the plan. The dollar amount of Class 5 claims voting to reject the plan is $91,169.53. (Debtor's Exhibit 4, Exhibit A). The dollar amount of Class Five claims accepting the plan is $1,121,644.05. *Id.* However, this amount includes the acceptances of two insiders: the Debtor's parent company, United Resources, Inc., ("URI"), which holds an allowed unsecured claim in the amount of $414,119.19, and an affiliated company, Lorad, Inc., which holds an allowed unsecured claim in the amount of $676,221.18. (Debtor's Exhibit 3, Schedule F, pp. 31, 18).[2]

---

**2.** As expressly permitted by 11 U.S.C. § 1123(a)(4), these insider creditors are consenting to plan treatment that is inferior to that of other members of their class, and are waiving any right to distribution under the plan. (Debtor's Exhibit 2, p. 34).

20. The Debtor concedes that, as to Class 5, the plan fails the two-thirds test of § 1126(c) unless at least one of these insider ballots is counted. Conversely, § 1126(c) is satisfied if either accepting ballot is allowed.

21. Guardian contends that insider votes are *per se* disqualified in determining class acceptance under § 1126. The Court rejects this argument for several reasons.

22. First, Guardian's argument is unsupported by the plain language of the statute, which this Court is bound to apply. Section 1126 nowhere provides that insider votes are automatically disqualified from the class vote computation. If Congress had intended to automatically exclude insider votes from the computation, it could and would have said so, as it did in § 1129(a)(10), where insider votes are disqualified for the purpose of determining whether an impaired accepting class exists.[3] Moreover, § 1126(c) expressly states that the only votes that may be disregarded in the computation are votes of entities designated under § 1126(e) (discussed further below).

23. In addition, a number of courts that have considered this issue have concluded that § 1126 does not automatically exclude insider votes in determining class acceptance.

24. For example, in *In re Gilbert*, 104 B.R. 206 (Bankr.W.D.Mo.1989), the court considered the relationship between § 1126(c) and § 1129(a)(10), and concluded that, in counting votes under 1126(c), there is no basis for excluding insider votes, where the acceptance of the subject class is not needed to establish an impaired accepting class. In the present case, as previously noted, there is no § 1129(a)(10) issue as to Class 5 because there are two other impaired accepting classes which contain no insiders.

25. Similarly, in *Matter of Grimes Furniture, Inc.*, 47 B.R. 68 (Bankr.W.D.Pa.1985), the court concluded that affirmative insider votes of an impaired class may be counted for purposes of § 1126(c) when there is at least one other accepting impaired class which contains no insiders. This is precisely

the situation before the Court in the present case. *See also Matter of Medical Equities, Inc.*, 39 B.R. 795 (Bankr.S.D.Ohio 1984) (acceptance by a class is not affected because there may be two insiders in the class, because insiders are not automatically disqualified from voting, in the absence of bad faith).

■ 26. The Court agrees with these cases and concludes that the insider votes are not automatically excluded under § 1126. The insider votes must be counted unless the Court "designates" the insiders and disqualifies their votes under 11 U.S.C. § 1126(e).

27. 11 U.S.C. § 1126(e) provides:

On request of a party in interest, and after notice and a hearing, the court may designate any entity whose acceptance or rejection of such plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of this title.

28. Guardian cites various cases to support its argument that the insider votes should be designated and disqualified under § 1126(e). *In re Allegheny Intern., Inc.*, 118 B.R. 282, 293 (Bankr.W.D.Pa.1990); *In re Applegate Property, Ltd.*, 133 B.R. 827 (Bankr.W.D.Tex.1991); *In re Holly Knoll Partnership*, 167 B.R. 381 (Bankr.E.D.Pa. 1994); *In re Dune Deck Owners Corp.*, 175 B.R. 839 (Bankr.S.D.N.Y.1995). These cases are inapposite because, in each of them, the disqualified creditors had acquired claims post-petition for the specific purpose of manipulating the voting on the plan. In *Allegheny, Applegate* and *Dune Deck Owners*, the disqualified parties purchased claims post-petition to block confirmation of a competing plan. In *Holly Knoll*, an insider acquired a non-insider's impaired claim post-petition in order to manufacture an accepting impaired class for purposes of § 1129(a)(10).

29. None of these egregious circumstances exists in the instant case. There is no competing plan, and there are several accepting impaired classes. In addition, the insiders whom Guardian seeks to designate, hold bona fide *pre-petition* claims; they were

---

**3.** As previously indicated, § 1129(a)(10) is satisfied in this case, without regard to any insider

votes, because Class 1, has accepted the plan.

not acquired post-petition in order to manipulate voting on the plan. The Debtor proved by the greater weight of the evidence that Lorad holds a valid pre-petition claim against the Debtor for goods sold and monies advanced and that URI holds a valid pre-petition claim for monies advanced. (Scarborough Affidavit, ¶¶ 14–15; T 28–31, 74). Thus, these claims existed at the time the petition was filed.

■ 30. The burden is on the objecting creditor to sustain its claim under § 1126(e) that acceptance or rejection of the plan was not in good faith, or was not solicited or procured in good faith or in accordance with Title 11. Under § 1126(e), the court should designate votes of only those creditors who were engaged in wrongdoing. *See, e.g., In re Allegheny Intern., Inc.,* 118 B.R. 282, 293 (Bankr.W.D.Pa.1990).

31. In this case, there is simply no evidence of the type of wrongdoing that gives rise to disqualification under § 1126(e). The two insider creditors held their claims prepetition, and chose to vote them in support of the Debtor's plan, which they are perfectly free to do. The Court finds that Guardian has failed to sustain its burden of proving the type of wrongdoing or misconduct sufficient to warrant application of § 1126(e).

32. It follows from the foregoing that the votes of Lorad and URI must be counted in determining whether Class 5 has accepted the plan under § 1126(f). When these votes are counted, Class 5 has accepted the plan in an overwhelming amount. Accordingly, the plan satisfies § 1129(a)(8) and it is not necessary for the Debtor to resort to cramdown under § 1129(b).

### The Plan Has Been Proposed in Good Faith and Satisfies § 1129(a)(3)

33. As a corollary to its designation argument, Guardian contends that the Debtor has not proposed the plan in good faith, and that the plan accordingly violates § 1129(a)(3).

■ 34. The good faith requirement has been defined as requiring a showing that the plan was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected. *Kane v.*

*Johns–Manville Corp.,* 843 F.2d 636 (2d Cir. 1988); *In re SM 104, Ltd.,* 160 B.R. 202 (Bankr.S.D.Fla.1993). It is designed to "prevent abuse of the bankruptcy laws and protect jurisdictional integrity." *In re Walker,* 165 B.R. 994, 1001 (E.D.Va.1994).

■ 35. Generally, a plan is proposed in good faith if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the Code. *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 723 (Bankr.S.D.N.Y.1992). Bad faith exists if there is no realistic possibility of reorganization and the debtor seeks merely to delay or frustrate efforts of secured creditors. *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir.1984).

■ 36. Whether a plan has been proposed in good faith is determined "in light of the totality of circumstances" and in light of the bankruptcy code's purpose to provide debtors with a fresh start. *In re SM 104, Ltd.,* 160 B.R. 202 (Bankr.S.D.Fla.1993).

■ 37. Applying these standards, the Court finds abundant evidence of good faith on the part of this Debtor in connection with its plan in that:

—The plan will save jobs and will permit a 60–year old Miami business to continue to operate.

—The plan achieves a consensual resolution of over $4 million of secured debt.

—The plan achieves a consensual resolution of over a million dollars of filed priority and secured tax claims.

—Insiders holding over $1 million of intercompany claims are waiving all distributions on their creditor claims.

38. The Court finds that the plan proponent has acted in good faith, that the plan is proposed in good faith, and that § 1129(a)(3) is satisfied.

### The Absolute Priority Rule Does Not Apply In This Case

39. Under the plan, the Debtor's shareholder, URI, is retaining its stock ownership of the Debtor. Since unsecured creditors are admittedly not receiving full payment of their

claims under the plan, Guardian argues that the plan violates the absolute priority rule and cannot be confirmed. For the reasons set forth below, the Court disagrees.

40. As discussed above, every class of creditors entitled to vote on the plan, has accepted the plan. This is a consensual plan. Under the Bankruptcy Code, the absolute priority rule applies only in the context of cramdown of an impaired *rejecting* class under § 1129(b).[4] The absolute priority rule is a component of the "fair and equitable" requirement of § 1129(b), which only comes into play if there is a rejecting *class*. As the court stated in *In re Winters*, 99 B.R. 658, 663 (Bankr.W.D.Pa.1989):

> The absolute priority rule is now applicable only when the proponent of the plan seeks to "cramdown" the plan under the alternative confirmation standard contained in § 1129(b) on a *class* that is impaired and has rejected the plan.
>
> ... [U]nder § 1129(a), if each class of creditors has accepted the plan (notwithstanding the minority dissent within the class), the plan will be confirmed if the other requirements of § 1129(a) are satisfied. The Code does not give the minority dissenting creditor a right to raise an objection based on the absolute priority rule which is contained in § 1129(b)(2).

41. Stated another way, in the context of a *consensual* plan, § 1129(a) contains no reference to the absolute priority rule. It appears only in § 1129(b).

42. A lone dissenter in an accepting class, such as Guardian is here, cannot invoke the absolute priority rule. Such a creditor's only remedy is the best interest of creditors test under § 1129(a)(7), otherwise known as the "Chapter 7 liquidation test." This test is clearly satisfied in this case, because Sun-Bank's all-encompassing lien on the Debtor's assets far exceeds their liquidation value. (Scarborough Affidavit, ¶ 7; Debtor's Exhibit 2, Exhibit C).

43. In *In re BMW Group I, Ltd.*, 168 B.R. 731 (Bankr.W.D.Okla.1994), the court approvingly cited Professor Elizabeth Warren's paper, *A Theory of Absolute Priority*, and incorporated it in its entirety. In the section entitled "The Legal Analysis", Professor Warren states:

> Section 1129 does not say that any objecting creditor may stop a plan in which old equity participates in the post-bankruptcy reorganization. Rather, the Code provides that acceptance or rejection of the plan shall be by creditor *classes*. Unsecured creditors may vote their pro rata debt, but if the class as a whole accepts the plan by one-half in number and two-thirds in amount of debt, the plan is deemed accepted by the whole class—dissenters and all. *Individual creditors have no recognized objection.* Thus, individual creditors may receive considerably less than full payment under a plan while old equity retains an interest.
>
> Unlike the best interests test which guarantees that each creditor will receive at least as much as it would have received in reorganization, *the absolute priority rule restricts distribution to old equity only if there is not an adequate majority of creditors in each class to accept the plan.* The importance of this observation is simply to highlight that the absolute priority rule is not an absolute statement that creditors will always prevail over old equity. Such a provision could have been written into the Code, but it was not. The distributional impact is unmistakable: *the absolute priority rule cannot even be called into question by a creditor who is too small to dominate its class.*

*Id.* at 749 (emphasis added). The Court agrees with this analysis. In this case, where all impaired classes have accepted the plan, the absolute priority rule simply does not apply.

### Guardian's Other Objections

44. Guardian's remaining objections may be disposed of more briefly. First, Guardian argues that the plan is not "fair

---

**4.** The rule appears in § 1129(b)(2)(B)(ii) and provides that a plan cannot be confirmed over the objection of a rejecting unsecured class if the unsecured creditors are not paid in full at confirmation or if "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property."

and equitable" because unsecured creditors are receiving only 10% on their claims while equity retains its interest in the Debtor. The "fair and equitable" requirement applies only in the context of cramdown under § 1129(b), and not to this Debtor's consensual plan.

■ 45. Guardian also objects to the classification of Lorad and URI in the same class as other unsecured creditors, stating that this is "blatant gerrymandering," and citing *Matter of Greystone III Joint Venture,* 948 F.2d 134 (5th Cir.1991). *Greystone* and other so-called "gerrymandering" cases are inapposite, because they involve the *separate* classification of an unsecured claim (usually, as in *Greystone,* an undersecured creditor's deficiency claim) from the general unsecured class, thus unfairly segregating one unsecured claim from another. This is not the situation presented here. The gerrymandering argument would have applied if the Debtor had attempted to *separately* classify the Lorad and URI claims in order to manufacture an impaired accepting class for purposes of § 1129(a)(10).

. 46. The Court has already found that Lorad and URI hold valid pre-petition unsecured claims. In fact, Lorad and URI are by far the largest unsecured creditors of this estate. The claims represent actual unsecured value given to the Debtor by these creditors, and are thus sufficiently similar to other Class 5 claims to be permissibly classified there under 11 U.S.C. § 1122(a). The mere fact that they are held by insiders is insufficient to require separate classification.

### *Conclusion*

The Debtor has established, by the greater weight of the evidence, that its plan satisfies every applicable provision of § 1129(a). It is unnecessary for the Debtor to resort to cramdown under § 1129(b). The absolute priority rule does not apply in this case. The Court finds that the plan should be confirmed and will enter a separate order confirming the plan.

**DONE AND ORDERED.**